**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NEIL ANAND, | : | CIVIL ACTION |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| INDEPENDENCE BLUE CROSS, | : | |
| *Defendant.* | : | NO. 20-6246 |

**<u>MEMORANDUM</u>**

KENNEY, J.                                                          JULY 23, 2021

## I.   INTRODUCTION

Plaintiff Dr. Neil Anand ("Anand") brings this pro se action against an insurance company, Defendant Independent Blue Cross, LLC ("IBC").  Anand's Amended Complaint is more than one thousand paragraphs long and includes sixty-four claims against IBC.  Presently before the Court is the Defendant's Motion to Dismiss, in which it argues that the Court must dismiss this case, first, for lack of subject matter jurisdiction and, secondly, for failure to state a claim upon which relief can be granted.  For the following reasons, the Court will take the unusual step of dismissing the entire Amended Complaint *sua sponte* for failure to adhere to Fed. R. Civ. P. 8., while at the same time addressing at some length the Motion to Dismiss and making some rulings thereon both with and without prejudice while trying to comprehend the incomprehensible and to give the pro se plaintiff guidance and an opportunity to restructure and set forth viable claims in an attempt to avoid a further dismissal with prejudice.[1]  With this

---

[1] Anand's Amended Complaint is more than one thousand paragraphs and includes sixty-four claims against IBC. The conclusory legal allegations, contradictory factual statements, and inconsistencies in the Amended Complaint make it difficult to understand the purported basis for these claims.  As the Court advised Anand at Oral Arguments on the Motion to Dismiss, the Amended Complaint is not a "short and plain statement" as required by Fed. R. Civ. P. 8.  Anand is advised that he may file an amended complaint rectifying the issues with his pleading discussed herein.  If he chooses to do so, Anand's amended complaint should comply with the requirements established under Rule 8, and Rule 9(b) with respect to his fraud-based claims.

approach in mind, the Court will also grant in part and deny in part the Defendant's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) without prejudice to the Defendant to file a full and comprehensive Motion to Dismiss if and when a comprehensive Second Amended Complaint is filed. The Court previously addressed these issues with the Amended Complaint in its current form with the Plaintiff at Oral Arguments on the Motions to Dismiss which the court combined with a Pre-trial conference in an attempt to bring some semblance of order and practical reality to the pleadings. Plaintiff may file an Amended Complaint curing the deficiencies identified herein and has until August 13, 2021 to do so.

## II.   BACKGROUND

### A. Factual Background

Plaintiff Anand is an anesthesiologist who has been employed by Atlantic Health Care PLLC (AHC), a medical practice partnership formed in 2013, and/or Institute of Advanced Medicine and Surgery PLLC (IAMS), a medical practice formed in September of 2014 by Anand and two other medical doctors. Amended Complaint ("Amen. Compl.") ¶ 1, Neil Anand v. Independence Blue Cross, No. 20-6246 (March 24, 2021), ECF No. 22. Anand also formed a separate partnership in 2015 with Dr. Paul Soccio. *Id.* Defendant IBC is a health insurance company that entered into agreements with Anand, as an individual, and with IAMS. *Id.* ¶ 2. On or around March 31, 2013, Anand entered into a written agreement with IBC. *Id.* Under the terms of the agreement, Anand became an in-network provider who could treat IBC members and obtain reimbursement for services provided at a discounted rate. *Id.* ¶ 8. One alleged key term of the agreement was that IBC would not penalize Anand's advocacy on behalf of his patients to obtain coverage for what he determined to be appropriate and necessary health services. *Id.* ¶ 147. Additionally, the provider agreement required IBC to reimburse Anand for

services provided to IBC's members.  *Id.* ¶ 8.  Anand's claims against IBC appear to involve four general disputes: Anand's advocacy for his patients, issues with IBC's reimbursement and coding processes, IBC's statements about Anand to third parties, and IBC's use of software to monitor controlled substances prescriptions.

When an IBC member sought treatment from Anand, the patient would "sign contracts with AHC, BCPPM, and IAMS," "including but not limited to Assignment of Benefits from IBC to either Anand or the Companies."  Amen. Compl. ¶¶ 9, 10, 18.  Anand does not specifically identify which or how many of his patients were covered by IBC insurance policies, but he indicates that some of his patients were covered by IBC insurance policies within the Employment Retirement Income Security Act (ERISA).  *Id.* ¶ 20.  These assignment-of-benefits contracts, when forwarded to IBC network coordinators, gave Anand the right to obtain reimbursement for the treatment provided to IBC members.  *Id.* ¶¶ 11, 19.  To obtain reimbursement for the treatment, Anand would submit a claim to IBC, identifying the procedure provided with treatment "codes developed by the American Medical Association."  *Id.* ¶ 12.  IBC uses a computer program to process these claims that "is programmed to reduce costs (where appropriate) by 'down coding' (reading certain CPT codes as requests for less expensive service) and 'grouping' (combining certain CPT codes as if they were a single procedure)."  *Id.* ¶¶ 13, 14.

Although the timeline of events is not clear from the Amended Complaint, it appears that Anand's first issue occurred in January 2015, when Anand appealed to IBC's denial of coverage for his proposed treatment plan of an IBC member, "patient K.T."  Amen. Compl. ¶¶ 58-63.  At this time, Anand learned that IBC "initiates investigations on doctors who file multiple appeals on behalf of patients" and was told that IBC "would retaliate against him if [he] dared to file another appeal on behalf of patient K.T."  *Id.* ¶¶ 62, 63.  IBC allegedly directed K.T. to file an

"incorrect and unsubstantiated complaint against Anand" with the Commonwealth of Pennsylvania Department of State Professional Compliance Office, after which Anand stopped receiving business from the "pain group" that referred patient K.T. to him.  *Id.* ¶¶ 63, 64.

In June 2015, Anand hired Paul Soccio to join his medical practice.  Amen. Compl. ¶ 36. Relying on Soccio's false representation that he was an IBC-credentialed healthcare provider, Anand let Soccio treat his patients.  *Id.* ¶¶ 36, 39, 43.  In or around August 2015, Anand learned that Soccio lied about his credentials to bill with IBC.  *Id.* ¶ 47.  As a result, most of the claims submitted to IBC in mid-2015 had to be returned and resubmitted because IBC would not reimburse the practice for uncredentialed billing.  *Id.* ¶ 51.  Soccio terminated his relationship with Anand and Anand's medical practices by May 2016.  *Id.* ¶ 65.  Before leaving, Soccio obtained confidential information from Anand, including patient lists, fee schedules, physician dispensing programs, and Dr. Chrono templates.  *Id.* ¶¶ 66-69.

Although Anand addressed the errors that Soccio created, after 2015, IBC began denying newly submitted claims, retracting old claims, and offsetting future claims.  Amen. Compl. ¶ 55. These issues escalated when Lorraine Stewart, who had been assigned as Anand's IBC network coordinator, began denying many of Anand's claims.  *Id.* ¶ 82.  Anand's claims were coded as "physical therapy and other services not normally billed by an Anesthesiologist," prompting Stewart to deny the claims and refer him for an audit because she determined that he was "not credentialed to perform and bill" these treatments.  *Id.* ¶¶ 84-87.  After IBC audited Anand's billing, it "flagged" him in the system and "blacklisted" him from treating patients.  *Id.* ¶ 95. IBC initially acknowledged several computer errors responsible for these problems, but it failed to correct the issues.  *Id.* ¶ 57.

Anand's ongoing issues with IBC's billing and claims processing escalated in April 2016, when Anand began advocating for his patient, W.S., to receive pain medication for bladder cancer.  Amen. Compl. ¶ 96.  Victor Carabello, IBC's senior director of quality management, told Anand that "IBC doesn't care about or desire the treatment of cancer pain of their Members" in reference to the expensive medication that Anand thought W.S. should receive.  *Id.* ¶ 97.  Carabello also indicated that Anand's notes about the patient's history were inadequate and attempted to force Anand to amend W.S.'s medical chart.  *Id.* ¶¶ 96, 99.  On August 10, 2016, Anand received a letter from Caraballo telling Anand that he was removed from the IBC network "due to [his] failure to comply with the term of a corrective action plan."  *Id.* ¶ 99.  The letter apparently also suggested that Caraballo's objections to Anand's notes were meant to cover up IBC's real issue—that Anand "was serially appealing for expensive pain medications that IBC did not want to pay for."  *Id.* ¶ 99.  On the same day, Caraballo sent a separate letter to Soccio indicating that Anand was prohibited from professionally treating IBC members and that Anand's existing IBC-member patients needed to be transferred to another credentialed physician.  *Id.* ¶ 101.

On November 9, 2016, IBC officially removed Anand from its network and terminated the Provider Agreement.  Amen. Compl. ¶ 103.  Anand believes that he was "terminated solely for zealously advocating for his patient."  *Id.* ¶ 104.  Although no written contract existed between the parties after November 9, 2016, Anand continued to treat IBC's members as an "out-of-network provider."  *Id.* ¶ 28.  IBC's computer system, however, continued to improperly reimburse his claims at the lower, in-network provider rate.  *Id.*  Anand alleges that IBC "continued to 'bully' and threaten [him]" and that it conspired with other insurance companies, his business partners, and third parties.  *Id.* ¶ 35.  Specifically, he alleges that IBC attempted to

dissuade patients from seeking treatment from Anand, by making "unsolicited phone calls" to get patients to terminate their contracts with Anand. *Id.* ¶ 134. Several patients filed complaints against IBC with the Pennsylvania Insurance Department about IBC's communications. *Id.* At some point after this incident, IBC "deliberately erased Anand's profile out of their database" and stopped reimbursing his treatment of IBC's members. *Id.* ¶¶ 128-29. Although IBC refused to reimburse Anand for treatment provided to its members, IBC employees allegedly informed some of Anand's patients that he was still an in-network provider and that the insurance plan would cover treatment with Anand. *Id.* ¶ 109.

Furthermore, on March 15, 2017, Anand learned that IBC was reimbursing "an unrelated entity" for the claims that Anand had submitted to IBC. Amen. Compl. ¶ 106. Additionally, because IBC's accounting department issued Anand IRS 1099's that reflected IBC as having paid Anand for the claims reimbursed to the wrong practice, Anand seems to have paid tax on money that he did not actually receive. *Id.* ¶ 108. Anand complained about this erroneous reimbursement, but IBC failed to correct the issue. *Id.* At this point, Anand retained a lawyer but his efforts to settle the problem failed. *Id.* On November 8, 2017, Anand emailed IBC's employees, informing them that he filed complaint against IBC with the Commonwealth Pennsylvania Insurance Department Bureau of Consumer Services. *Id.* ¶ 115. In the email, Anand explained that he complained because "IBC was being vexatious, harassing, unethical, and willfully ignoring ERISA and Pennsylvania Commonwealth Law." *Id.* He also indicated that IBC was "acting in bad faith" and violating ERISA and the Pennsylvania Unfair Trade Practices Act and Consumer Protection Law. *Id.* ¶ 116.

IBC's employees continued to cause issues for Anand and his medical practice. In March 2019, two employees disrupted Anand's office when they visited without an appointment.

Amen. Compl. ¶ 137.  They alluded to "being able to use sophisticated data mining software tools and said that they have made referrals to federal and local third parties against doctors before."  *Id.* ¶ 138.  On January 8, 2020, Anand received a letter from IBC requesting that he pay back money obtained for services, but the claims mentioned in the letter had all been paid by other insurance companies.  *Id.* ¶ 140.  After this letter, another insurance company conducted its own audit of Anand's billing and found that IBC had no right to reimbursement for these claims. *Id.* ¶ 141.  Several months later, on July 29, 2020, Anand learned from "confidential information" that IBC and its employees "maliciously engaged in a deliberate conspiracy with evil motives against Plaintiff."  *Id.* ¶ 152.

In addition to the billing problems, Anand criticizes the software that IBC marketed and used to monitor prescriptions of controlled substances.  *Id.* ¶¶ 165-66.  IBC and its partner, Blue Cross Blue Shield Michigan, allegedly used this software to target pain physicians for criminal prosecution.  *Id.* ¶ 213.  Apparently, IBC shares data produced by the software with government agencies.  *Id.* ¶ 166.  Anand alleges that this software results in erroneous flagging because it fails to consider events beyond the physician's control, such as patient decisions and medical necessity.  *Id.* ¶ 191.

### B.  Procedural History

On November 6, 2020, Anand filed a complaint in the Philadelphia Court of Common Pleas that asserted forty claims against IBC.  Plaintiff's Complaint, Neil Anand v. Independence Blue Cross, No. 20-6246 (December 11, 2020), ECF No. 1, Exhibit A.  IBC removed this case to this Court on December 11, 2020, under 28 U.S.C. § 1446.  Defendant's Motion to Dismiss ("Mot. to Dismiss") at 5 n.3, Neil Anand v. Independence Blue Cross, No. 20-6246 (May 12, 2021), ECF No. 33.  Anand subsequently filed a Motion to Remand and Bifurcate, which this

Court denied on January 29, 2021.  Motion of Remand, *Neil Anand v. Independence Blue Cross*, No. 20-6246 (January 26, 2021), ECF No. 13; Order on Motion to Remand, *Neil Anand v. Independence Blue Cross*, No. 20-6246 (January 29, 2021), ECF No. 14.  Anand's Amended Complaint, filed on March 24, 2021, asserts sixty-four claims against IBC and contains more than one thousand paragraphs.

IBC filed a Motion to Dismiss Plaintiff's Amended Complaint on May 12, 2021, in which it asks the Court to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6).  *Id.*  On June 11, 2021, this Court held a combined Oral Argument on Defendant's Motion to Dismiss and preliminary conference.  Notice of Hearing, *Neil Anand v. Independence Blue Cross*, No. 20-6246 (June 11, 2021), ECF No. 42.  This Court gave Anand a full and lengthy opportunity to discuss his claims and the factual allegations upon which his claims rest.

## III.   LEGAL STANDARDS

### A.  Standard for Rule 8

A complaint is "a short and plain statement of the claim showing that the pleader is entitled to relief," to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Fed. R. Civ. P. 8(a).  Factual allegations that do not merely recite legal conclusions or elements of a claim are entitled to a presumption of truth.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Under Rule 8's liberal pleading standard, a party may also lay out claims in the alternative.  Fed. R. Civ. P. 8(d)(2).  However, the party must provide factual allegations supporting each alternative theory.  *Dille Fam. Tr. v. Nowlan Fam. Tr.*, No. CV 15-6231, 2016 WL 7202073, at *1 n.1 (E.D. Pa. Apr. 21, 2016).  A court may dismiss, *sua sponte*, a complaint for failure to comply with Rule 8(a).  *See, e.g., Tucker v. Sec'y U.S. Dep't of Health & Hum. Servs.*, 645 F. App'x 136, 137 (3d Cir. 2016) (affirming dismissal of a 205-page complaint that

was "difficult to understand").  The length of a complaint is not, alone, sufficient reason to dismiss a complaint for failure to comply with Rule 8(a).  *Bhatt v. Hoffman*, 716 F. App'x 124, 128 (3d Cir. 2017).  Dismissal is proper, however, when the "complaint is so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised." *Tucker v. Sec'y U.S. Dep't of Health & Hum. Servs.*, 645 F. App'x at 137 (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).

### B.  Standard for Rule 12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction "may present either a facial or a factual challenge to the court's subject matter jurisdiction."  *In re Merritt*, 529 B.R. 845, 858 (Bankr. E.D. Pa. 2015), *aff'd*, No. 11-18134, 2016 WL 930696 (E.D. Pa. Mar. 10, 2016), *aff'd*, 711 F. App'x 83 (3d Cir. 2017) (quoting *O'Neill v. Cook,* 828 F. Supp.2d 731, 735 (D. Del. 2011)).  In a facial attack, when a movant asserts that the claim is insufficient on its face to invoke subject matter jurisdiction, a court applies the same standard of review as for a 12(b)(6) motion.  *Id.*  A movant may also challenge the factual basis for subject matter jurisdiction. *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 275 n.14 (3d Cir. 2016); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  In a factual attack, the factual allegations are not entitled to the presumption of truth.  *Hartig Drug*, 836 F.3d at 275 n.14. Instead, a defendant may present contrary evidence and contest factual allegations.  *Id.*  A court may look beyond the pleadings when ruling on the challenge.  *In re Merritt*, 529 B.R. at 858.

When a Rule 12(b)(1) motion is brought with a Rule 12(b)(6) motion, the Rule 12(b)(1) motion must be considered first, since it is only after there is jurisdiction can the court rule on the merits.  *Id.*  Under Rule 12(b)(1), the plaintiff bears the burden of showing that the court has subject matter jurisdiction.  *Pancari v. Fox Chase Cancer Ctr.*, No. CV 20-1844, 2020 WL

3542319, at *2 (E.D. Pa. June 30, 2020) (quoting *Schneller ex rel. Schneller v. Crozer Chester Med. Ctr.*, 387 F. App'x 289, 292 (3d Cir. 2010)).

### C.  Standard for Rule 12(b)(6)

A motion to dismiss challenges the legal sufficiency of a complaint.  Fed. R. Civ. P. 12(b)(6).  In order to survive a motion to dismiss, the complaint must contain sufficient facts, accepted as true, "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face when the facts in the complaint support "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plausibility standard guiding this Court on a motion to dismiss is not a "probability requirement" but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  It requires sufficient factual allegations that, if taken as true, "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555.

The Third Circuit has a three-step test for ruling on a motion to dismiss: (1) "'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "identify allegations that, 'because they are no more than conclusions, are not entitled to the assumptions of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675).

A court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the light most favorable to the nonmoving party. *Connelly*, 809 F.3d at 791 (quoting *Iqbal*, 556 U.S. at 675).  A court need not "accept as true 'unsupported conclusions and unwarranted inferences.'" *Cty of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 n.

13 (3d Cir. 1998) (quoting *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)).  Facial plausibility "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Dismissals under Rule 12(b)(6) should be without prejudice, unless "an amendment would be inequitable or futile." *Phillips v. Cty of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008)

### D.  Standard When Presented with a Pro Se Complaint

A court must construe a pro se plaintiff's pleadings liberally.  *See Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333 (3d Cir. 2011), *as amended* (Sept. 19, 2011); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Although pro se complaints are held "to less stringent standards than formal pleadings drafted by lawyers," pro se litigants must still assert sufficient factual allegations to support their claims to survive a Motion to Dismiss.  *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  Furthermore, pro se plaintiffs are not exempt from the heightened pleading requirements of Rule 9(b) when pleading fraud claims.  *See Kaul v. Christie*, 372 F. Supp. 3d 206 (D.N.J. 2019), appeal dismissed, No. 19-1651, 2019 WL 4733531, at *229 (3d Cir. June 20, 2019).

## IV.    DISCUSSION

### A.  Anand's Amended Complaint Does Not Satisfy Federal Rules of Civil Procedure Rule 8

Before addressing IBC's Motions under Rules 12(b)(6) and 12(b)(1), this Court will dismiss, *sua sponte*, the Amended Complaint for failure to comply with Fed. R. Civ. P. 8.  Although dismissal under Rule 8 is generally disfavored, it is appropriate here because "the complaint is so verbose, confused and redundant that its true substance, if any, is well disguised." *Bhatt v. Hoffman*, 716 F. App'x 124, 127 (3d Cir. 2017) (citing *Hearns v. San

*Bernardino Police Dep't*, 530 F.3d 1124, 1131 (9th Cir. 2008)); *see also In re Westinghouse Sec. Litig.*, 90 F.3d 696 (3d Cir. 1996) (affirming dismissal under Rule 8 of plaintiff's complaint that was more than 600 paragraphs and 240 pages). The Amended Complaint is more than one hundred pages long and includes sixty-four claims. This lengthy and confusing complaint is an example of a "shotgun pleading" that fails to "give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015); *see also Hynson v. City of Chester Legal Dep't*, 864 F.2d 1026, 1031 n.13 (3d Cir. 1988) (criticizing the "shotgun pleading approach"); *Washington v. Warden SCI-Greene*, 608 F. App'x 49 (3d Cir. 2015) (affirming dismissal under Rule 8 of a forty-one page, handwritten complaint that asserted claims against fifty-nine defendants).

First, the Amended Complaint is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Weiland*, 792 F.3d at 1322. It begins with a long preamble about the history of mathematical models and "Medicine versus Mathematics clashes." Amen. Compl. at 3, 7. The following thirty-one pages contain a confusing mix of factual and conclusory legal allegations. Many of these allegations concern Anand's relationship with Soccio, who is not a party to this litigation. *See, e.g.*, *id.* ¶ 73 (alleging that Soccio "misappropriated [confidential information] and unleashed himself competitively against Plaintiff . . . "); ¶ 77 ("statements by Soccio are false, and constitute commercial disparagement and defamation per se"). Anand also makes general and conclusory statements about the nature of IBC's alleged wrongdoing.[2] He provides nearly two pages of "issues" with

---

[2] For example, Anand's claim for tortious interference with the business relationship between doctors and their patients with the allegation: "Defendants tortiously interfered with contractual and business relations," is followed by the elements for tortious interference, and then the conclusion that "Defendants intentionally interfered with

IBC's billing system, but each point is a non-specific statement that the IBC committed "[f]alse and vexatious and malicious denial of claims." *Id.* ¶ 57.  Anand's claims about IBC's bad behavior often appear to relate to "confidential information, newly and freshly obtained" on July 29, 2020, that purportedly establishes that "Defendant IBC and its atrocious employees . . . maliciously engaged in a deliberate conspiracy with evil motives against Plaintiff." *Id.* ¶ 152. Anand does not, however, indicate what this information was or provide any factual allegations that would support a plausible inference of conspiracy.  Without providing plausible factual assertions to support these claims, Anand continues to repeat that IBC "maliciously terminated," "maliciously continued to lie," and "intentionally disparage[d]." *Id.* ¶¶ 34, 63, 128.

Anand's claims against IBC begin on page forty of the Amended Complaint, but he continues to reference Soccio's alleged misconduct, creating uncertainty about the harm that Anand suffered and the identity of the wrongdoer.  For instance, Anand's intentional infliction of emotional distress claim includes the allegation that "IBC employees and/or Soccio" were responsible for the intentional infliction of emotional distress.  Amen. Compl. ¶ 674.  Although Anand may bring claims in the alternative, this assertion that either a non-party—Soccio—or IBC harmed him does not provide a basis upon which relief can be granted.  Anand's misappropriation and defamation claims suffer from similar defects because he fails to identify what information IBC allegedly misappropriated or what defamatory statements it allegedly made.  *See id.* ¶ 249 ("IBC misappropriated the confidential information and trade secrets of Plaintiff").  Furthermore, Anand fails to offer anything more than conclusory statements to support the existence of a conspiracy between IBC's employees and Soccio.  *See, e.g.*, *id.* ¶ 261 ("[Soccio] was conspiring with Lorraine Stewart and other IBC employees to destroy said

---

Anand and Companies contractual relations with its in-network participating patients, businesses, physician partners, and out of network patients."  Amen. Compl. ¶¶ 515-17.

Companies . . . "); ¶ 762 ("Defendants engaged in an anti-competitive conspiracy by conspiring with Soccio").  These vague and conclusory statements cannot establish IBC's liability for the sixty-four counts.  *See Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017).

Other claims, particularly alleging violations of regulatory or criminal statutes, merely quote from the statute to establish IBC's liability.  For example, Anand frequently accuses IBC of having "deliberately and actively violated" a statute and claims that "[u]nder the legal doctrines of Malum In Se, Negligence Per Se and Illegal Per Se, Plaintiff can pursue legal redress against Defendant."  *See, e.g.*, Amen. Compl. ¶¶ 847-849.  Pennsylvania courts have held that "a federal regulation may establish the standard of care appropriate to the underlying tort of negligence per se under state tort law."  *See, e.g.*, *In re Reglan/Metoclopramide Litig.*, 81 A.3d 80, 94 (Pa. Super. Ct. 2013).  To state a claim for relief under the doctrine of negligence per se a plaintiff must allege that: "1) the statute or regulation clearly applies to the conduct of the defendant; 2) the defendant violated the statute or regulation; 3) the violation of the statute proximately caused the plaintiff's injuries; and 4) the statute's purpose is, at least in part, to protect the interest of the plaintiff individually, as opposed to the public."  *Mest v. Cabot Corp.,* 449 F.3d 502, 518 (3d Cir. 2006) (citing *Wagner v. Anzon, Inc.*, 684 A.2d 570, 574 (Pa. Super. Ct. 1996)).  At no point in the Amended Complaint does Anand provide any information from which this Court could find that he has made such a showing.

Furthermore, Anand seeks punitive and/or exemplary damages, as well as costs and attorney's fees.  As IBC notes in its Motion to Dismiss, Anand has failed to plausibly allege facts that would provide the basis for the punitive damages that he seeks.  Mot. to Dismiss at 40-41.  Anand's conclusory allegation that IBC acted "willfully and maliciously" fails to satisfy the burden for a party seeking punitive damages.  Amen. Compl. ¶ 414; *see Hutchison ex rel.*

*Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005) (explaining that punitive damages are an extraordinary remedy and are only proper "where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct.").  Furthermore, as a pro se plaintiff, Anand is not entitled to recover attorney's fees.  *See Lowe v. Lowe*, 110 A.3d 211, 214 (Pa. Super. Ct. 2015) (holding that the Pennsylvania statute permitting recovery for attorney's fees, 42 Pa. C.S. § 2503, does not allow a pro se party to recover legal costs); *see also Cunningham v. Fed. Bureau of Investigation*, 664 F.2d 383, 385-88 (3d Cir. 1981) (declining to allow a pro se party to recover attorney's fees and discussing the policy reasons behind this decision).  His damages also present a problem because he appears to request damages for himself, as an individual, and for his medical practices.  *See id.* ¶¶ 249, 262, 289, 345, 511, 589, 591.

Even when liberally construed, Anand's claims are not plausible.  As this Court explained to Anand at oral argument, he may not bring wholly unsubstantiated claims and may not undertake a fishing expedition.  ECF No.44 at 38; *see, e.g.*, *Williams v. Gilmore*, No. CV 18-0238, 2018 WL 4698921, at *4 (E.D. Pa. Sept. 28, 2018).  One of Anand's most outlandish and unsubstantiated claims is that IBC violated 18 U.S.C. § 35, the "Bomb Hoax Act," which covers the making of false statements about bombs on civil aircraft.  Amen. Compl. ¶ 1013.  Anand fails to provide any factual allegations that could support an inference that IBC made a statement about an aircraft or an explosive device.  At other points in the Amended Complaint, Anand's allegations display his lack of knowledge about the cause of his harm: "Soccio and/or Defendants were apparently communicating to third parties false and defamatory claims with an intent to take away Dr. Neil Anand's privileges at Roxborough Memorial Hospital."  *Id.* ¶ 444.

Furthermore, some of Anand's claims are general allegations that IBC violated a statute without any allegation as to the specific provision of the statute that it allegedly violated.  For

example, Anand alleges that IBC violated the Insurance Department Act of 1921, which

recognized different categories of insurance companies and imposed regulatory requirements.

*See Com. v. Life Assur.* Co., 35 Pa. D. & C.2d 390, 393 (Pa. Com. Pl. 1964), *aff'd sub nom. Com.*

*v. Life Assur. Co. of Pa*., 214 A.2d 209 (Pa. 1965).  Beyond the fact that this statute does not

create a private right of action, Anand has not even identified which section of the Act he

believes IBC violated.  Mot. to Dismiss at 38 (citing *Smith v. Nationwide Mut. Fire Ins. Co.*, 935

F. Supp. 616 (W.D. Pa. 1996)).[3]

Anand's Amended Complaint is not a "short and plain statement" and it does not show

that he "is entitled to relief."  Fed. R. Civ. P. 8(a).  The length, unrelated information, and

repeated conclusory allegations disguise any "true substance" of his claims.  *Tucker v. Sec'y U.S.*

*Dep't of Health & Hum. Servs.*, 645 F. App'x 136, 137 (3d Cir. 2016) (quoting *Simmons v.*

*Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).  The Court believes, however, that Anand may be able

to revise his pleadings to comply with Rule 8(a).  In light of the preference for affording pro se

plaintiffs an opportunity to amend, this dismissal will be without prejudice.  *Grayson v. Mayview*

*State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).  Accordingly, the Amended Complaint is

dismissed without prejudice for failure to comply with Rule 8.[4]

### B.  Anand's Amended Complaint Is Dismissed Without Prejudice Under Rule 12(b)(1) Because He Lacks Standing to Represent His Companies.[5]

---

[3] Similarly, Anand does not articulate which provisions of the Affordable Care Act he believes that IBC violated. Amen. Compl. ¶¶ 862-906.

[4] If Anand decides to file an amended complaint, he must meet the heightened pleading standard of Fed. R. Civ. P. 9(b) for Counts V (Fraudulent Inducement); XX (Fraud under Pennsylvania Law); XL (RICO claim with predicate acts of mail and wire fraud); XXXI (26 U.S. Code § 7434).  *See Enslin v. The Coca-Cola Co.*, 136 F. Supp. 3d 654 (E.D. Pa. 2015), *aff'd sub nom. Enslin v. Coca-Cola Co.*, 739 F. App'x 91 (3d Cir. 2018) (quoting *Ethanol Partners Accredited v. Wiener, Zuckerbrot, Weiss & Brecher*, 635 F. Supp. 18, 22 (E.D. Pa. 1985)) (explaining that for claims of fraud in federal court, plaintiffs should "plead with particularity the "'time, place and manner' of each of the defendants' fraudulent statements or actions.").

[5] Anand also alleges that IBC violated Section 35 of the Lanham Act.  Amen. Compl. ¶ 364.  In general, the Lanham Act provides a civil remedy for competitors harmed by false advertising, and certain non-competitors are also

IBC asks this Court to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(1) because Anand lacks standing to represent his medical practices pro se, depriving the Court of subject matter jurisdiction.  Mot. to Dismiss at 3 (citing 28 U.S.C. § 1654).  Although individuals may proceed pro se, it is well-established that corporations and professional limited liability companies must be represented by legal counsel in federal court.  28 U.S.C. § 1654; *see also In re 69 N. Franklin Tpk.*, *LLC,* 693 F. App'x 141, 144 (3d Cir. 2017); *Mazzoni v. United States*, No. CIV.A. 2:05-CV-5743, 2006 WL 1564020, at *1 (E.D. Pa. Apr. 17, 2006).

IBC alleges that Anand violates 28 U.S.C. § 1654 by bringing claims on behalf of his medical practices.  IBC notes that Anand refers to "the Companies" 138 times in the Amended Complaint, in addition to references to the individual medical practices.  Mot. to Dismiss at 2.  During oral arguments on the Motion to Dismiss, Anand acknowledged that he is not trying to sue on behalf of the companies but identified his medical practices as "interested parties" that suffered harm from IBC's actions.  ECF 44 at 13-14.  Despite Anand's indication to the contrary, this Court finds that the Amended Complaint purports to bring claims on behalf of the Companies.  At various points throughout the Amended Complaint, Anand appears to allege that both he and "the Companies" are entitled to damages because of IBC's conduct.  *See* Amen. Compl. ¶¶ 249, 262, 289, 345, 511, 589, 591, 706, 730.  Additionally, other claims appear to hinge on representations that either Anand or "the Companies" can satisfy an element of the claim.  For example, Anand claims that he has derivative standing for his ERISA claims because patients completed contracts "including but not limited to Assignment of Benefits from IBC to either Anand or the Companies."  *Id.* ¶ 712.

---

recognized as having a cause of action under the Act.  *Thorn v. Reliance Van Co.*, 736 F.2d 929, 931 (3d Cir. 1984).  Anand fails to plead that he is a proper plaintiff and has standing under the Act.

Anand's Amended Complaint is dismissed without prejudice to the extent that it purports to bring claims on behalf of his medical practices or that it attempts to satisfy elements of claims by alleging injury to the companies.  A party has standing to bring a claim within the meaning of the "case-or-controversy requirement of Article III" when the party establishes injury-in-fact, causation, and redressability.  *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014) (quoting *Davis v. FEC,* 554 U.S. 724, 734 (2008)).  Anand may file an amended complaint that cures the standing issue by including only those claims for which he can show injury-in-fact, causation, and redressability.

### C.  IBC's Motion to Dismiss Under 12(b)(6) is Granted in-Part and Denied in-Part

IBC has also filed a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(6). Each reason for dismissal is addressed below.

### 1)  Sherman Act Claim is Dismissed Without Prejudice

Although Anand alleges a restraint of trade claim under Section 1 of the Sherman Act, the Amended Complaint also seems to allege antitrust and monopolization claims.  Amen. Compl. ¶ 763.  IBC asks this Court to dismiss this claim because Anand fails to provide any factual allegations regarding the alleged conspiracy with Blue Cross Blue Shield of Michigan, the relevant product market, or the anticompetitive impact.  Mot. to Dismiss at 17-19.

Under Section 1 of the Sherman Act, a plaintiff must prove the geographical area and the relevant market.  *Columbia Metal Culvert Co. v. Kaiser Aluminum & Chem. Corp.*, 579 F.2d 20, 26 (3d Cir. 1978).  Since courts generally apply a fact-specific analysis of the market power, "courts usually cannot properly apply the rule of reason without an accurate definition of the relevant market."  *Lifewatch Servs. Inc. v. Highmark Inc.*, 902 F.3d 323, 336 (3d Cir. 2018) (quoting *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284-85 (2018)).  The outer boundaries of

the relevant market are "determined by the reasonable interchangeability of use between a product and its substitute, or by their cross-elasticity of demand." *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 307 (3d Cir. 2007).  A complaint can be properly dismissed if the plaintiff fails to refer to either the interchangeability or the cross-elasticity, or defines a market but fails to encompass all interchangeable products.  *Lifewatch Servs. Inc.*, 902 F.3d at 337 (citing *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997)).

Anand neither identifies the product of the relevant market, nor defines the outer boundary of the market.  The only information provided in the Amended Complaint with respect to this issue is that "Defendant is the largest and leading health insurer in Philadelphia."  Amen. Compl. ¶ 751.  Anand later contradicts this allegation, identifying IBC as the only health insurer in the area.  *Id.* ¶¶ 751, 752, 765.  Anand's Sherman Act claim cannot proceed absent an allegation about the relevant market.

Furthermore, Anand fails to allege that there is an agreement or conspiracy between IBC and other parties.  An agreement exists when there is "a unity of purpose, a common design and understanding, a meeting of the minds, or a conscious commitment to a common scheme." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 99 (3d Cir. 2010).  This generally requires allegations that the parties entered into a conspiracy or contractual relationship.  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 315 (3d Cir. 2010).  Mere parallel conduct is insufficient to satisfy the conspiracy pleading requirement.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 551 (2007).  Anand alleges that IBC partnered with Blue Cross Shield of Michigan, developed a model called Facilitated Health Network, and conspired with Soccio to harm Anand's business.  Amen. Compl. ¶¶ 750, 762.  Aside from these general conclusions, however, Anand fails to provide any facts tending to show an agreement or conspiracy between the parties.

Additionally, the Amended Complaint does not satisfy the unreasonable restraint element required for a Section 1 Sherman Act claim.  15 U.S.C. § 1.  At the pleading stage, a plaintiff may satisfy the unreasonable-restraint element by alleging that the conspiracy produced anticompetitive effects in the relevant markets.  *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d at 100.  Anticompetitive effects or injury could include "reduction of output, increase in price, or deterioration in quality of goods and services."  *Lifewatch Servs. Inc.*, 902 F.3d at 340 (quoting *Deborah Heart & Lung Ctr. v. Virtua Health, Inc.*, 833 F.3d 399, 403 (3d Cir. 2016)).  Aside from his conclusory allegations that IBC "caus[ed] market injury to Plaintiff and other individual physicians and small groups," Anand only alleges that IBC controlled and reduced physician fee schedules, removed him from the network, and declined to cover his treatment of patients.  Amen. Compl. ¶¶ 750, 768, 770.  These alleged injuries are personal injuries that cannot support a finding that "[p]laintiff's exclusion from the market affected the price or supply of goods to the market."  Mot. to Dismiss at 18.  Accordingly, Anand's Sherman Act claim is dismissed without prejudice.

### 2)  ERISA Claim is Dismissed Without Prejudice

Anand alleges that IBC failed to uphold its obligation to maintain "reasonable claim procedures" as required under ERISA.  Amen. Compl. ¶ 689.  Anand alleges that he has a cause of action under Section 502(a) for benefits due, including attorney's fees.  *Id.* ¶ 702.  He alleges that he has derivative standing, as a healthcare provider, under section 502(a)(2) of ERISA because IBC members contractually assigned their benefits to the Anand before receiving medical treatment from him.  *Id.* ¶¶ 711-712.  IBC argues that Anand's ERISA claims must be dismissed because he fails to plead "any information pertaining to the ERISA plans Independence's conduct allegedly violated."  Mot. to Dismiss at 19-20.

A valid claim under the Employee Retirement Income Security Act requires the existence of an insurance policy "obtained through (1) a plan, fund, or program (2) that is established or maintained (3) by an employer (4) for the purpose of providing benefits (5) to its participants or beneficiaries." *McCann v. Unum Provident*, 907 F.3d 130, 142 (3d Cir. 2018) (citing 29 U.S.C. § 1002(1); *Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982) (en banc)).  Under section 502(a)(1)(B) of ERISA, the beneficiary or participant of such an insurance plan can bring a civil action to recover benefits due under the plan.  29 U.S.C. § 1132(a)(1)(B).  Anand does not allege that he is a beneficiary of an IBC insurance policy.  He maintains, however, that he has standing to pursue these claims because his patients assigned him their insurance benefits. Amen. Compl. ¶¶ 711, 712.  Courts have generally found that assignment of benefits by the patient-beneficiary to a healthcare provider can confer standing under ERISA section 502(a)(2). *See Bloom v. Indep. Blue Cross*, 152 F. Supp. 3d 431, 439 (E.D. Pa. 2015) (citing *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 176 n.10 (3d Cir. 2014)); *see also New Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369 (3d Cir. 2015).

Anand has not satisfied the burden imposed on a plaintiff seeking relief under ERISA to establish that he was a participant or beneficiary in a qualifying insurance plan.  *See Mitchell v. Mobil Oil Corp.*, 896 F.2d 463, 474 (10th Cir. 1990).  Anand supports this element of his claim with conclusory and vague statements that, for example, some of the claims he submitted to IBC were "covered under Employee Retirement Income Security Act (ERISA) plans while other members were covered with non-ERISA plans."  Amen. Compl. ¶ 20.  The Amended Complaint does not identify the patient-beneficiaries, and it also fails to plausibly allege that Anand's patients assigned their benefits to Anand, as an individual provider, rather than to Anand's medical practice.  *See id.* ¶¶ 18, 711, 712.  Accordingly, Anand's ERISA claim, and his

derivative ERISA claims, are dismissed without prejudice.  *See NJSR Surgical Ctr., LLC. v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*, 979 F. Supp. 2d 513, 523 (D.N.J. 2013) (granting motion to dismiss on plaintiff's ERISA claim because the conclusory allegation that "the Patients provided assignments of benefits to the Plaintiffs" did not provide the requisite particularity that there was a valid assignment to confer upon the plaintiff-healthcare provider derivative standing); *see also In re Aetna UCR Litig.*, No. CIV. 07-3541, 2015 WL 3970168 (D.N.J. June 30, 2015) (dismissing plaintiff-provider's ERISA claims for failure to plead specific assignment of patient benefits from patient-beneficiaries to the healthcare provider).

Even if Anand's ERISA claim could proceed, it would also encounter problems with the damages sought.  Disputes arising out of the provider agreement are breach of contract claims that are separate from ERISA coverage for reimbursement for patient benefits.  *Bloom v. Indep. Blue Cross*, 152 F. Supp. 3d 431, 441 (E.D. Pa. 2015).  The distinction is between asserting the right to payment—depending on the assignment of benefits to the provider by the patients (ERISA)—and disputes over the amount of or coverage of the plan for the treatment—governed by the provider agreement.  *Id.* at 432 (citing *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 177-78 (3d Cir. 2014)).  In the instant case, it appears that Anand seeks to recover money due under the Provider Agreement, not payment under the terms of his patients' insurance policy.  *See, e.g.*, *DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*, 852 F.3d 868, 878 (9th Cir. 2017) (distinguishing between these kinds of damages).  Anand should consider the nature of the damages that he seeks for his ERISA claim before incorporating it in any amended complaint that he may file.

Anand also claims that IBC violated two amendments to ERISA: the Mental Health Parity Act of 1996 and the Mental Health Parity and Addiction Equity Act.  Amen. Compl. ¶¶

219, 872-906.  Section 502(a) of ERISA provides a civil cause of action for violations of these acts.  *See Michael W. v. United Behavioral Health*, 420 F. Supp. 3d 1207, 1228 (D. Utah 2019) (evaluating plaintiff's standing to bring a claim for a violation of § 1132(a)(3) under § 502(a)); *see also Jarman v. Cap. Blue Cross*, 998 F. Supp. 2d 369 (M.D. Pa. 2014) (analyzing plaintiff's standing to bring a § 1185(a) claim under § 502(a)).  These derivative ERISA claims are also dismissed without prejudice because the Amended Complaint does not allege an ERISA claim upon which relief can be granted.  *See* 29 U.S.C. § 1132(a)(3); 29 U.S.C. § 1185(a).

### 3)  RICO Claim is Dismissed Without Prejudice

The Racketeer Influenced and Corrupt Organization Act (RICO) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c).  To state a RICO claim, a plaintiff must plausibly allege the: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).  The plaintiff must also allege that the racketeering activity was the proximate cause of his injury.  *See Gratz v. Ruggiero*, 822 F. App'x 78, 81 (3d Cir. 2020).  Finally, a RICO injury requires "concrete financial loss and not mere injury to a valuable intangible property interest."  *Id.* (quoting *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 804 F.3d 633, 638 (3d Cir. 2015)).

Under 18 U.S.C. § 1961(5), a RICO claim requires at least two occurrences of a predicate act, amounting to a "pattern" of racketeering activity.  Anand specifically identifies mail and wire fraud as predicate activities for the claim, alleging that IBC committed "repeated acts of indictable mail fraud" with its intentional "claims processing errors" that led to "erroneous explanation of benefits."  *Id.* ¶¶ 801, 803.  As these predicate acts are fraud-based, a heightened

pleading standard applies to the RICO claim.  Fed. R. Civ. P. 9(b).  *See In re Aetna UCR Litig.*,
No. CIV. 07-3541, 2015 WL 3970168, at *25 (D.N.J. June 30, 2015) (citing *Lum v. Bank of Am.*,
361 F.3d 217, 223 (3d Cir. 2004)); *see also Warden v. McLelland*, 288 F.3d 105, 114 (3d Cir.
2002).  To satisfy this heightened pleading standard, "allegations of predicate mail and wire
fraud acts should state the contents of the communications, who was involved, where and when
they took place, and explain why they were fraudulent."  *Mills v. Polar Molecular Corp.*, 12 F.3d
1170, 1176 (2d Cir. 1993); *see also*, *Schwartz v. Laws. Title Ins. Co.*, 680 F. Supp. 2d 690, 709
(E.D. Pa. 2010) (citing *United States v. Pharis*, 298 F.3d 228, 234 (3d Cir. 2002)) (explaining
that a claim for mail or wire fraud requires the plaintiff to allege with particularity: "(1) a scheme
to defraud; (2) the use of the mails or wires for the purpose of executing the scheme; and (3)
fraudulent intent.").  Anand's conclusory allegations do not meet the heightened pleading
standard for the predicate RICO acts.  *See* Amen. Compl. ¶ 795 ("These entities and persons use
the Internet, fax and mail to transfer information and documentation across state lines, wrestling
in mail or wire fraud"); ¶ 801 ("Predicate racketeering activities also included: mail and wire
fraud by refusing to pay the physician for work performed by the physician (i.e. theft of
services), extortions by seeking to obtain property via the color of law, and improper civil asset
forfeiture.").  Additionally, Anand does not plausibly allege a scheme to defraud.  *See Kolar v.
Preferred Real Est. Invs., Inc.*, 361 F. App'x 354, 362 (3d Cir. 2010) ("It is the scheme that must
be fraudulent, not necessarily the particular mail or wire transmissions that constitute the
offenses.").  Accordingly, Anand's RICO claim is dismissed without prejudice for failure to
plead the elements of the claim with particularity.  Fed. R. Civ. P. 9(b).

     Although Anand's RICO claim must be dismissed, this Court will also evaluate IBC's
argument that Anand "offers no plausible factual assertions to support his contention that Blue

Cross Blue Shield Michigan was involved with the alleged scheme with Independence."  Mot. to Dismiss at 20-21.

For a RICO claim, an "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  Furthermore, the Supreme Court has identified a "separateness" requirement for the enterprise element: a plaintiff must "allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name."  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161–62 (2001).  The separateness requirement indicates that the enterprise may not consist of a single corporation and its employees.  *See United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co*., 719 F.3d 849, 854 (7th Cir. 2013); *see also Macauley v. Est. of Nicholas*, 7 F. Supp. 3d 468, 481-82 (E.D. Pa. 2014) (citing *Stoss v. Singer Fin. Corp.*, CIV.A.08–5968, 2010 WL 678115, at *5 (E.D. Pa. Feb. 24, 2010) ("a plaintiff can bring a civil RICO claim against an owner who conducts her company's affairs in a way forbidden by RICO, but cannot allege RICO claims against a company, its employees and its agents for the same conduct where the company is the enterprise and violates RICO through its employees and agents").  An association-in-fact enterprise must have a "purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  *Boyle v. United States*, 556 U.S. 938, 946 (2009).  The alleged enterprise need not have any specific structural features; it is sufficient that the alleged enterprise is "a continuing unity that functions with a common purpose."  *Id.* at 948.

According to the Amended Complaint, "the Enterprise" consisted of IBC, its employees, Blue Cross Blue Shield Association, Highmark Blue Cross, AmeriHealth Caritas, and Blue Cross

Blue Shield of Michigan.  Amen. Compl. ¶ 795.  Anand alleges that this enterprise engaged in a "pattern" of "schemes calculated to deceive and defraud physicians" to avoid paying the full amount of claims billed by patient providers.  *Id.* ¶¶ 795-800.

Construing the Amended Complaint in the light most favorable to the plaintiff, it is unclear whether Anand can establish the existence of an enterprise.  Most importantly, Anand presents contradictory and confusing factual allegations about the relationship between IBC, Blue Cross Blue Shield Michigan, and Amerihealth Caritas.  *See* Amen. Compl. ¶ 173 (identifying Amerihealth Caritas as a joint company of IBC and Blue Cross Blue Shield Michigan); ¶ 209 ("IBC and BCBS of Michigan are operating jointly in the state of Pennsylvania via a relationship in AmeriHealth Caritas . . . "); ¶ 213 ("Defendant IBC and its partner BCBS Michigan and Amerihealth Caritas has famously and publicly announced to the World through its employee Jody Gembarski that they are using software algorithms to specifically target pain physicians.").  Anand's confusing Amended Complaint obscures any plausible RICO enterprise. The RICO claim is dismissed without prejudice for this reason.

### 4)  Plaintiff's Claims Under Criminal Statutes Are Dismissed With Prejudice

Anand alleges that IBC violated several criminal statutes: 18 U.S.C. § 35 (making false statements about bombs on civil aircrafts), 18 U.S.C. § 241 (conspiracy to deprive civil rights), 18 U.S.C. §1030 (accessing a computer without authorization), 18 U.S.C. § 1031 (major fraud against the United States), 18 U.S.C. § 1035 (false statements relating to health care matters), 18 U.S.C. § 1038 (making false or misleading statements about military programs or terrorist attacks), and 18 U.S.C. § 1584 (sale into involuntary servitude).  IBC asks this Court to dismiss these claims because they do not provide a private cause of action.  Mot. to Dismiss at 36-37.

To the extent that Anand seeks to impose criminal liability for IBC's alleged violations of these criminal statutes, he lacks standing to do so. *See United States v. Friedland*, 83 F.3d 1531, 1539 (3d Cir. 1996) ("the United States Attorney is responsible for the prosecution of all criminal cases within his or her district."); *see also United States v. Batchelder*, 442 U.S. 114, 124 (1979). Although some federal criminal statutes also create a private right of action, civil plaintiffs only have standing to sue for violations of criminal statutes when Congress has created a private right of action. *See, e.g.*, *Alexander v. Sandoval*, 532 U.S. 275, 285 (2001).

Anand's claims under 18 U.S.C. §§ 241, 1035, 1584 must be dismissed because these federal criminal statutes do not create a private right of action. *See Carpenter v. Ashby*, 351 F. App'x 684 (3d Cir. 2009) (18 U.S.C. § 241 does not create a civil cause of action); *United States ex rel. Savage v. Arnold*, 403 F. Supp. 172, 173 f. 1 (E.D. Pa. 1975) ("It is established that [18 U.S.C. § 241] . . . do[es] not allow for a civil recovery"); *Lorah v. Christiana Care Hosp.*, No. CV 16-1018-LPS, 2017 WL 3396448 (D. Del. Aug. 8, 2017) (18 U.S.C. § 1035 does not create a private right of action); *Bhagwanani v. Howard Univ.*, 355 F. Supp. 2d 294, 301 n.5 (D.D.C. 2005) (no private cause of action under 18 U.S.C. § 1584); *Joynes v. Meconi*, No. CIV.A. 05-332 GMS, 2006 WL 2819762, at *10 (D. Del. Sept. 30, 2006) (18 U.S.C. § 1584 does not create a private right of action); *but see Manliguez v. Joseph*, 226 F. Supp. 2d 377 (E.D.N.Y. 2002) (allowing a private suit under § 1584 to proceed). *See generally Mathis v. Phila. Elec. Co.*, No. CV 14-2234, 2015 WL 12914149, at *4 (E.D. Pa. July 31, 2015), *aff'd*, 644 F. App'x 113 (3d Cir. 2016) ("A private party may generally not sustain a lawsuit under Title 18 of the United States Code"). These claims are frivolous and are dismissed with prejudice.

Furthermore, Anand's claims under 18 U.S.C. §§ 35, 1030, 1031, 1038 must be dismissed because Anand has failed to plausibly allege the facts that would give rise to a claim

for civil liability under these criminal statutes. Anand has not alleged that IBC made a false

statement about a bomb on a civil aircraft, as required for liability under the Bomb Hoax Act, 18

U.S.C. § 35. *See, e.g.*, *United States v. Hassouneh*, 199 F.3d 175, 179 (4th Cir. 2000).

Similarly, Anand's claim under 18 U.S.C. § 1038 is dismissed because he does not allege that

IBC violated any of the predicate acts required for civil liability. *See, e.g.*, *United States v.*

*Nixon*, 664 F.3d 624 (6th Cir. 2011) (the Stop Terrorist and Military Hoaxes Act prohibits an

individual from knowingly making false statements about terrorist attacks.); *Pettus v. Erole*, No.

19CV5893AMDLB, 2019 WL 5863983, at *3 (E.D.N.Y. Nov. 8, 2019) (explaining that civil

liability under 18 U.S.C. § 1038(a)(1) requires a knowingly false statement about the occurrence

of a predicate act relating to crimes involving "nuclear, biological, or chemical weapons, aircraft

piracy, and sabotage of nuclear weapons and explosives"). Anand has not plausibly alleged

unauthorized computer access, as required to state a civil cause of action under section 1030, the

Computer Fraud and Abuse Act. *See Brown v. City of Phila. Off. of Hum. Res.*, 735 F. App'x 55,

56 (3d Cir. 2018). Finally, Anand's claim under 18 U.S.C. § 1031 must be dismissed because he

has not alleged that he was an employee of IBC. *ManorCare of Easton Pa. LLC v. Est. of Nagy*,

No. CV 13-5957, 2017 WL 4347624, at *4 (E.D. Pa. Sept. 29, 2017) (quoting 18 U.S.C. §

1031(h)(1)) (the only civil remedy available under 18 U.S.C. § 1031 is for an employee who is

"discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated

against in the terms and conditions of employment by an employer because of lawful acts done

by the employee."). Anand's claims under criminal statutes are dismissed with prejudice.

### 5) Claim Under 42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code "does not create substantive rights, but

provides a remedy for the violation of rights created by federal law." *Groman v. Twp. of*

*Manalapan*, 47 F.3d 628, 631 (3d Cir. 1995). To state a claim under 42 U.S.C. § 1983, a

plaintiff must allege that (1) he was deprived of federal constitutional or statutory rights (2) by the conduct of "a person acting under color of state law." *Robb v. City of Phila.*, 733 F.2d 286, 290–91 (3d Cir. 1984); *see also West v. Atkins*, 487 U.S. 42, 48 (1988). These claims may only proceed under § 1983 if the plaintiff has plausibly alleged that the defendant was acting "under the color of state law" when the alleged injuries occurred. *Groman v. Twp. of Manalapan*, 47 F.3d at 637 ("there is no liability under § 1983 for those not acting under the color of state law."). It is not enough for a plaintiff to show that the private actor was involved with the state. Rather, a cognizable § 1983 claim requires a plausible allegation that the "state was involved 'with the activity that caused the injury' giving rise to the action." *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257-58 (2d Cir. 2008) (quoting *Schlein v. Milford Hosp., Inc.*, 561 F.2d 427, 428 (2d Cir. 1977)).

Anand alleges that IBC is a state actor because it trades "data mined analytics in partnership with Medicare, about physicians and patients" and works with "USDOJ and Medicare [to induce] criminal; proceedings against the 'suspect class' which are pain and addiction physicians." Amen. Compl. ¶ 924. IBC argues that Anand's claims relying on section 1983 must be dismissed because it is not a state actor. Mot. to Dismiss at 28-29.

In determining whether a private party's actions occurred "under the color of state law," the central inquiry is whether the private party's action "may be fairly treated as that of the State itself." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974). More specifically, there are three tests for determining whether a private entity may be considered a state actor: (i) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state, *see, e.g.*, *Jackson*, 419 U.S. at 352, (ii) whether the state has "so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant

in the challenged activity," *see Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009), and (iii) whether

the private actor has worked "together with or obtained significant aid from state officials,"

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). *See generally*, *Manhattan Cmty. Access*

*Corp. v. Halleck*, 139 S. Ct. 1921, 1930 (2019) (discussing the categories of cases in which the

Supreme Court has found that a private actor may be considered a state actor). IBC denies that it

is a state actor. Mot. to Dismiss at 28-29.

First, Anand alleges that IBC is a state actor because of its partnership with Medicare.

Amen. Compl. ¶¶ 175, 540. Providing medical insurance is not a traditional public function

reserved exclusively for the state. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999).

Construing the Amended Complaint liberally, Anand appears to argue that IBC is nevertheless a

state actor because of its insurance activities because the government is "heavily *involved*" in the

insurance industry. Amen. Compl. ¶ 184. IBC's work with the government funded and

regulated Medicare program is insufficient to identify it as a state actor. *Hodge v. Paoli Mem'l*

*Hosp.*, 576 F.2d 563 (3d Cir. 1978) (finding that a private hospital's receipt of federal funds did

not satisfy the § 1983 state action requirement); *Blum v. Yaretsky*, 457 U.S. 991, 1011–12 (1982)

(holding that a nursing home was not a state actor under the public function doctrine even though

ninety percent of residents received federal assistance); *Broderick v. Associated Hosp. Serv. of*

*Phila.*, 536 F.2d 1 (3d Cir. 1976) (denying claim that defendant-insurers were state actors

because the government regulates the insurance industry); *Schneller v. Prospect Park Nursing &*

*Rehab. Ctr.*, No. CIV. A. 08-5704, 2009 WL 1838337, at *6 (E.D. Pa. June 25, 2009) ("The fact

that hospitals and nursing homes may be extensively regulated and may receive financial support

from the government through Medicaid and Medicare does not make them state actors.").

Anand invokes a second public function theory of state action, alleging that "IBC, BCBSM and AmeriHealth Caritas are involved in law enforcement conduct that's traditionally a 'public function.'"  Amen. Compl. ¶ 188.  Analysis under the "public function" test typically looks at whether there was a delegation of responsibility by a public entity to the private entity. *See, e.g.*, *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1924 (2019) (Sotomayor, J., dissenting) ("When a government (1) makes a choice that triggers constitutional obligations, and then (2) contracts out those constitutional responsibilities to a private entity, that entity—in agreeing to take on the job—becomes a state actor for purposes of § 1983."); *West v. Atkins*, 487 U.S. 42, 55-58 (1988) (holding that a private medical provider was a state actor under the public function test where the medical provider had contracted with the government to provide healthcare to prisoners).  The central question is whether "a private entity has exercised powers traditionally reserved exclusively to the government."  *Brown v. Philip Morris Inc.*, 250 F.3d 789, 801 (3d Cir. 2001) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974)). Anand's state action claims fail under the public function theory because he does not allege that the government delegated any of its prosecutorial or investigative responsibility to IBC.

Finally, Anand invokes the "joint action" theory of state action, alleging that IBC was a "willful participant in joint action with the State or its agents" because of its access to the Blue Cross Blue Shield data analytics program that was "to be utilized against Plaintiff in conjunction with the 'Government.'"  Amen. Compl. ¶ 540 (citing *Dennis v. Sparks*, 449 U.S. 24, 28 (1980)). The "joint action" theory requires that the plaintiff alleges an agreement between the private actor and a state entity to violate the plaintiff's federal constitutional or statutory rights.  *See Cunningham v. Southlake Ctr. For Mental Health, Inc.*, 924 F.2d 106, 107 (7th Cir. 1991). Anand alleges that BCBS of Michigan, "a partner of Defendant through Amerihealth Caritas,"

"famously and publicly acknowledged their partnership with Medicare to prosecute physicians who prescribe controlled substances."  Amen. Compl. ¶ 540.  Neither this allegation nor the other general allegations contained in the Amended Complaint about IBC's partnership with Medicare plausibly allege the existence of an agreement to violate Anand's rights between IBC and a state actor.  Government contractors do not automatically become state actors by performing contractual obligations.  *Rendell–Baker v. Kohn*, 457 U.S. 830, 840-41 (1982).

Furthermore, taking the allegations as true, Anand has not alleged the existence of a conspiracy between a state actor and the defendant-insurance company.  *See Fisk v. Letterman*, 401 F. Supp. 2d 362, 377 (S.D.N.Y. 2005) (citing *Moore v. Marketplace Rest., Inc.*, 754 F.2d 1336, 1353 (7th Cir. 1985) ("Communications between a private and a state actor, without facts supporting a concerted effort or plan between the parties, are insufficient to make the private party a state actor.").  To state a valid conspiracy claim, a plaintiff must provide facts "from which it could be inferred that the state actors substituted [the defendant's] judgement for their own." *Fisk v. Letterman*, 401 F. Supp. 2d at 377.  Supplying information to the government does not automatically make a private party a state actor.  *See, e.g., Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999); *Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983) ("The mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under [§ 1983]"); *Glunk v. Noone*, 186 F. Supp. 3d 453, 460, 460 (E.D. Pa. 2016) ("By providing documents to a third party who transmits them to the state, one does not become a state actor."); *Vickery v. Jones*, 100 F.3d 1334 (7th Cir. 1996) (finding that a political party's recommendations of candidates for open government positions did not make it a state actor).

Anand's state action claims do not satisfy any of the three tests for state action.  Anand's conclusory claims that IBC is, for example, "a State Actor regulator" or is "collu[ding] with Medicare as a State Actor" fail to satisfy the threshold requirement of state action for a section 1983 claim.  Amen Compl. ¶¶ 960, 962.  Thus, Anand's claims under section 1983 are dismissed with prejudice because IBC is not a state actor.

### 6)  The Constitutional Claims Are Dismissed with Prejudice

Anand brings several constitutional claims, alleging that IBC violated Article I, Section 10, Clause 1, Article I, Section 8, Clause 3, as well as the First, Fourth, Fifth, and Fourteenth Amendments.  IBC argues that these claims are "incomprehensible" and that they should be dismissed because IBC is not a state actor.  Mot. to Dismiss at 30; *see Lorah v. Christiana Care Hosp.*, No. CV 16-1018-LPS, 2017 WL 3396448 (D. Del. Aug. 8, 2017) (dismissing constitutional claims for failure to plead state action).

First, Anand alleges that IBC violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment.  The state action requirement for a Fourteenth Amendment claim are "identical" to the "under color of state law" requirement for a 42 U.S.C. § 1983 claim. *United States v. Price,* 383 U.S. 787, 794 n.7 (1966).  *See also*, *Lugar v. Edmondson Oil Co*., 457 U.S. 922, 929 (1982) ("[T]he statutory requirement of action 'under color of state law' and the 'state action' requirement of the Fourteenth Amendment are identical."); *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999).  The Fourteenth Amendment does not restrict private action, no matter how "discriminatory or wrongful" that action may be.  *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 349 (1974) (quoting *Shelley v. Kraemer*, 335 U.S. 1, 68 (1948)).  Having already determined that IBC is not a state actor for a § 1983 claim, Anand's Fourteenth Amendment claims are also dismissed with prejudice.

Anand also alleges that IBC violated the Contract Clause: "Defendant IBC who is also operating as a State Actor in partnership with Medicare with respect to the regulation of controlled substances, had no legal right to interfere with insured patients who are the ultimate deciders of who they want to freely associate and do business with."  Amen. Compl. ¶ 935. Citing *Lochner v. New York*, 198 U.S. 45 (1905), Anand alleges that "Defendant interfered with the liberty interest of Anand."  Amen. Compl. ¶ 946.  The Supreme Court has declined to follow *Lochner* for the past several decades.  *See, e.g.*, *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 861 (1992) (discussing the "demise of *Lochner*"); *Ferguson v. Skrupa*, 372 U.S. 726, 728 (1963) (critiquing *Lochner* and its progeny as "intrusion by the judiciary into the realm of legislative value judgements.").  Even if *Lochner* remained good law, Anand's claim would fail because the Contract Clause applies only to state action.  *See, e.g.*, *United Transp. Serv. Emp. of Am., CIO, ex rel. Wash. v. Nat'l Mediation Bd.*, 179 F.2d 446, 452 (D.C. Cir. 1949); *Peick v. Pension Ben. Guar. Corp.*, 724 F.2d 1247 (7th Cir. 1983) ("The contract clause, on its face, applies only to laws passed by States."); *Poirier v. Hodges*, 445 F. Supp. 838 (M.D. Fla. 1978) ("[The Contracts Clause] is not applicable to mere individual conduct by persons acting under color of state law.").  The "threshold inquiry" in a Contract Clause claim is "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship."  *Energy Reserves Grp., Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 411 (1983).  Anand has not identified a state law that violates his rights and, as discussed above, he has not plausibly alleged that IBC is a state actor.  Accordingly, the Contract Clause claim is dismissed with prejudice.

Anand's remaining Constitutional claims also fail because he has failed to plausibly allege that IBC is a state actor.  *Max v. Republican Comm. of Lancaster Cty.*, 587 F.3d 198, 200 (3d Cir. 2009) (First Amendment applies only to state actors and does not restrict the actions of

private entities); *United States v. Jacobsen*, 466 U.S. 109 (1984) (Fourth Amendment protections apply only to government action); *Pub. Utilities Comm'n of D.C. v. Pollak*, 343 U.S. 451, 461 (1952) (Fifth Amendment "restrict[s] only the Federal Government and not private persons."); *Ve-Ri-Tas, Inc. v. Advert. Rev. Council of Metro. Denver, Inc.*, 411 F. Supp. 1012 (D. Colo. 1976), *aff'd*, 567 F.2d 963 (10th Cir. 1977) (citing *Prudential Ins. Co. v. Benjamin*, 328 U.S. 408, 66 S. Ct. 1142 (1946)) (Article I, Section 8, Clause 3 of the Constitution "is a limitation upon the power of the state . . . It does not create any implied cause of action . . . "); *Washington v. U.S. Tennis Ass'n*, 290 F. Supp. 2d 323, 329 (E.D.N.Y. 2003) ("there is no private action for damages under the Commerce Clause). These claims are dismissed with prejudice because Anand failed to plausibly allege that IBC is a state actor.

### 7) Claims Under Civil Statutes that Do Not Create a Private Cause of Action Are Dismissed with Prejudice

Anand alleges that IBC violated several regulatory and civil acts, including the Health Care Quality Improvement Act (HCQIA) (requiring that adverse action against physicians are reported to the State Board), 40 P.S. § 991.2113 (Medical Gag Clause), 40 P.S. §§ 991.2101-2193 (Pennsylvania Insurance Company Law of 1929), 42 U.S.C. § 1396a (Medicare Act) (establishing the Medicaid and CHIP Payment and Access Commission and its duties), Controlled Substance Act § 802 (defining terms in CSA), Health Insurance Portability and Accountability Act (HIPAA) and 42 CFR Part 2 (enacted to improve health care coverage and continuity and to combat waste, fraud, and abuse), Pennsylvania Insurance Department Act (PIDA), the Gramm-Leach-Bliley Act of 1999, Pennsylvania Corporate Practice of Medicine (prohibiting corporations from hiring individuals to practice medicine). IBC argues that these claims should be dismissed with prejudice because none of these acts create a private right of action. Mot. to Dismiss at 33-40.

In general, "[w]hen a rights-creating statute contains no express cause of action, courts may either find that a private cause of action is implicit in the rights-creating statute or that a means of enforcing that right is contained elsewhere in federal law." *McGovern v. City of Philadelphia*, 554 F.3d 114, 117 (3d Cir. 2009).  When determining whether a statute creates a private right of action, however, courts should be reluctant to read an implied private cause of action into a statute.  *Alexander v. Sandoval*, 532 U.S. 275, 288 (2001).  This reflects the general presumption that only Congress can create a private cause of action for a statutory violation.  *Id.* at 286; *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017) (indicating that a court should not create a private cause of action absent direction from Congress).

As applied to the instant case, Anand's claims based on IBC's alleged violations of regulatory statutes must be dismissed because they do not provide for a private cause of action. *See, e.g.*, *Mirarchi v. Mangan*, No. CIV.A. 12-5749, 2013 WL 56112 (E.D. Pa. Jan. 3, 2013) (citing *Doe v. U.S. Dep't of Health & Human Services,* 871 F. Supp. 808, 812 (E.D. Pa.1994) *aff'd,* 66 F.3d 310 (3d Cir. 1995) (there is no private cause of action available for a physician under the Health Care Quality Improvement Act, 42 U.S.C. § 11101 *et seq.*); *UPMC Health Plan, Inc. v. Dep't of Health & Permedion*, 967 A.2d 412, 414 (Pa. Commw. Ct. 2008) (The Pennsylvania Insurance Department or the Department of Health, not private parties, have the authority to punish violations of the Pennsylvania Insurance Act of 1929, 40 Pa. Stat. Ann. §§ 991.2101-2193); *Durr v. Strickland*, 602 F.3d 788, 789 (6th Cir. 2010) (No private right of action exists under the Controlled Substance Act); *Hatfield v. Berube*, 714 F. App'x 99, 105 (3d Cir. 2017) (HIPAA does not create a private right of action); *Oates v. City of Philadelphia Civ. Serv. Comm'n*, No. CIV.A. 97-1220, 1998 WL 107300, at *1 (E.D. Pa. Feb. 18, 1998), *aff'd sub nom*. *Oates v. City of Philadelphia*, 176 F.3d 472 (3d Cir. 1999) (42 CFR Part 2 does not give

rise to a private right of action); *West v. Sun Trust Mortg.*, 2018 U.S. Dist. LEXIS 193807, at *12 (E.D. Pa. November 13, 2018) (citing *Dunmire v. Morgan Stanley DW, Inc.*, 475 F.3d 956, 960 (8th Cir. 2007)) (no private right of action is available under the Gramm Leach Bliley Act for violations of its financial reporting requirements).

Although Anand seems to recognize that some of these statutes may not confer a private cause of action, he maintains that his claims are actionable under the "legal doctrines of Malum In Se, Negligence Per Se and Illegal Per Se." Amen. Compl. ¶¶ 847-49. For example, he alleges that IBC's violation of the Pennsylvania Insurance Company Law of 1929 is an actionable claim "under Malum In Se Doctrines." *Id.* ¶ 745 (citing several criminal cases, e.g., *United States v. American Cyanamid Co.*, 354 F. Supp. 1202, 1205 (S.D.N.Y. 1973) (holding that "scienter is not required [and that] [t]he offense charged is malum prohibitum'")). A *malum in se* crime is an act that is wrong in itself and requires knowledge of wrongdoing for conviction, as contrasted with a *malum prohibitum* crime, for which guilty knowledge is not required. *See, e.g.*, *Com. v. Guthrie*, 616 A.2d 1019, 1021-22 (Pa. Super. Ct. 1992); *Commonwealth v. Borek*, 54 A.2d 101, 103 (Pa. Super. Ct. 1947). The concept of a *malum in se* crime does not apply to this civil suit and does not give Anand a cause of action against IBC. Similarly, Anand has failed to plausibly allege that he has a cause of action under the doctrine of negligence per se for IBC's violation of any of these statutes as is discussed above.

### a.   No Cause of Action Under 42 U.S.C. § 1396

Anand alleges that IBC violated the Medicare Act's "free choice provider provision." 42 U.S.C. § 1396(a)(23). IBC does not dispute that this provision may create a private right of action. Mot. to Dismiss at 36. IBC argues that Anand's claim must be dismissed because the private right of action afforded under § 1396(a)(23) is only enforceable through § 1983, and Anand has failed to plausibly allege that IBC is a state actor. *Id.*

Indeed, courts that have recognized this cause of action have found it enforceable by individuals through § 1983.  *See, e.g.*, *Planned Parenthood of Ind., Inc. v. Comm'r of Indiana State Dep't Health*, 699 F.3d 962, 975 (7th Cir. 2012); *Planned Parenthood Ariz., Inc. v. Betlach*, 727 F.3d 960 (9th Cir. 2013).  As previously discussed, Anand has failed to plausibly allege that IBC acted under the color of state law, as required to state a valid § 1983 claim.  Furthermore, the courts that have recognized such a private cause of action have only ever found that such a right exists for Medicare recipients.  *See, e.g.*, *Harris v. Olszewski*, 442 F.3d 456 (6th Cir. 2006) (Medicare recipients brought a class action suit under § 1983 against the Michigan Department of Community Health and its director); *Planned Parenthood of Kan. v. Andersen*, 882 F.3d 1205, 1225 (10th Cir. 2018) ("we conclude that the free-choice-of-provider provision confers on Medicaid patients a private right of action.").  Medical providers are not within the "zone of interests" protected by the freedom of choice provision.  *Cmty. Country Day Sch. v. Sch. Dist. of City of Erie*, No. CIV.A. 14-19, 2014 WL 3535341 (W.D. Pa. July 16, 2014), *aff'd sub nom. Cmty. Country Day Sch. v. Erie Sch. Dist.*, 618 F. App'x 89 (3d Cir. 2015); *see also, Planned Parenthood of Kan. v. Andersen*, 882 F.3d at 1226 ("Congress has therefore clearly intended to grant a specific class of beneficiaries—Medicaid-eligible patients—an enforceable right to obtain medical services from the qualified provider of their choice.").  *Cf. Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 332 (2015) (holding that a different section of the Medicare Act did not a private cause of action for medical providers because the Medicare Act was "for the benefit of the infirm whom the providers were to serve, rather than for the benefit of the providers themselves.").  Accordingly, Anand's § 1396a(a) claim is dismissed with prejudice.

### 8)  Claims Not Recognized under Pennsylvania Law
#### a.  Pennsylvania Does Not Recognize the Corporate Practice of Medicine Doctrine

Anand alleges that IBC violated the Pennsylvania Corporate Practice of Medicine Doctrine but fails to identify specific cases or statutory provisions to support his claim that Pennsylvania recognizes this doctrine.  Amen. Compl. ¶¶ 484-511.  IBC disputes that Pennsylvania recognizes the Corporate Practice of Medicine Doctrine and asks this Court to dismiss the claim.  Mot. to Dismiss at 39.

The Corporate Practice of Medicine Doctrine "prohibits the employment of doctors by unlicensed individuals or by corporations that are not formed and owned by doctors."  § 44:5.  Corporate Practice of Medicine Doctrine, 3 Health L. Prac. Guide § 44:5 (2021).  Not all states recognize this doctrine, but states that have recognized it have done so via interpretation of statutes mandating licenses to practice medicine and public policy concerns advocated for by the American Medical Association.  *See* Adam M. Freiman, *The Abandonment of the Antiquated Corporate Practice of Medicine Doctrine: Injecting A Dose of Efficiency into the Modern Health Care Environment*, 47 Emory L.J. 697, 698 (1998).  The relevant Pennsylvania statute, the Pennsylvania Medical Practice Act of 1985, does not provide a private cause of action.  *See Munsif v. Am. Bd. of Internal Med.*, No. CIV.A. 11-5949, 2012 WL 3962671, at *16 (E.D. Pa. Sept. 11, 2012); *State Farm Mut. Auto. Ins. Co. v. Midtown Medical Ctr. Inc.*, No. 02–7389, 2005 WL 627969, at *15-16 (E.D. Pa. Mar. 14, 2005) ("this Court finds that Plaintiffs lack standing to bring a claim under Pennsylvania law for the corporate practice of medicine").  As the Corporate Practice of Medicine Doctrine is not recognized in Pennsylvania, amendment to this claim would be futile and it is dismissed with prejudice.

### b.  Prima Facie Tort is Not Recognized under Pennsylvania Law

Anand alleges that "IBC employees and/or Soccio conspired to intentional [sic] inflict great harm and intentional infliction of emotional distress upon Plaintiff."  Amen. Compl. ¶ 674.  Anand also alleges that prima facie tort is a recognized cause of action in Pennsylvania.  *Id.* ¶

673 (citing *Smith v. Griffiths*, 476 A.2d 22 (Pa. Super. Ct. 1984); *LM Beverage Co. v. Guinness Imp. Co.*, No. 94-CV-4492, 1995 WL771113, at *5 (E.D. Pa. Dec. 29, 1995)).  IBC argues that Pennsylvania does not recognize a prima facie tort cause of action and asks this Court to dismiss the claim.  Mot. to Dismiss at 33.

Section 870 of the Restatement (Second) of Torts establishes the elements for prima facie tort:

> "One who intentionally causes injury to another is subject to liability to the other for that injury, if his conduct is generally culpable and not justifiable under the circumstances. This liability may be imposed although the actor's conduct does not come within a traditional category of tort liability."

The Supreme Court of Pennsylvania has not yet ruled on whether prima facie tort is recognized in Pennsylvania, nor has the Third Circuit predicted whether the Supreme Court of Pennsylvania would recognize such a claim.  *Hayes v. Waddell & Reed, Inc.*, No. CA 12-293, 2013 WL 5434139, at *8 (W.D. Pa. Sept. 26, 2013).  Anand relies on *Smith v. Griffiths* for the proposition that prima facie tort is recognized in Pennsylvania.  Amen. Compl. ¶ 673.  However, several courts have rejected this interpretation of *Smith*.  *See Charles Shaid of Pa., Inc. v. George Hyman Const. Co.*, 947 F. Supp. 844, 853 (E.D. Pa. 1996) (explaining that "[n]owhere in *Smith* did the Superior Court say that prima facie tort is a valid cause of action in Pennsylvania"); *D'Errico v. DeFazio*, 763 A.2d 424, 434 (Pa. Super. Ct. 2000) (rejecting appellant's argument that the Pennsylvania Superior Court recognized prima facie tort as a cause of action in *Smith*).

District courts addressing a prima facie tort claim have generally dismissed it as not recognized under Pennsylvania law.  *See, e.g.*, *Charles Shaid of Pa.* 947 F. Supp. at 853; *Hayes v. Waddell & Reed, Inc.*, 2013 WL 5434139, at *8; *Garland v. U.S. Airways, Inc.*, No. CIV.A. 05-140, 2006 WL 2927271, at *5 (W.D. Pa. Oct. 11, 2006); *Mumma v. Wachovia Bank*, N.A.,

No. CV 09-4765, 2016 WL 874782, at *8 (E.D. Pa. Mar. 2, 2016) (indicating in dicta that "we find no basis from which to conclude that the Pennsylvania Supreme Court would recognize [prima facie tort as a cause of action."); *Keating v. EquiSoft, Inc.*, No. CIV.A. 11-0518, 2014 WL 4160558, at *8 (E.D. Pa. Aug. 22, 2014) ("The Court agrees with the vast majority of courts determining this issue and concludes that intentional tort is not a cognizable legal theory in Pennsylvania."); *but see Devon IT, Inc. v. IBM Corp.*, 805 F. Supp. 2d 110 (E.D. Pa. 2011) (noting the lack of authority on the existence of prima facie tort in Pennsylvania law, but allowing plaintiff's prima facie tort claim to survive defendant's motion to dismiss).  This Court agrees with the great majority of courts that have addressed this issue, finding that the Pennsylvania Supreme Court would not likely recognize prima facie tort as a cause of action. *See generally utz v. Johnson*, No. CIV.A.04-CV-0437, 2004 WL 1368824, at *3 (E.D. Pa. June 16, 2004) (citing *Standard Pipeline Coating Co. v. Solomon & Teslovich, Inc.*, 496 A.2d 840, 843 (Pa. Super. Ct. 1985)) (Pennsylvania courts are reluctant to create new torts when there are existing causes of action that provide an adequate remedy).  Accordingly, the prima facie tort claim is dismissed with prejudice.

### 9) Claims for Breach of Fiduciary Duty by Co-Fiduciary and Breach of Fiduciary Duty

Anand brings alternative claims for breach of fiduciary duty: alleging that IBC is either liable for breach of fiduciary duties "incidental to their in-network contract with the Plaintiff," or as a "co-fiduciary under the Blue Cross Blue Shield Association."  Amen Compl. ¶¶ 319, 586. Anand alleges that IBC violated its fiduciary duty by "fraudulently inducing Plaintiff to treat IBC Members without paying for treatment of said Members, taking via data mining: the trade secrets, confidential information, patient lists, fee schedules, business opportunities, logos, websites, business names and EMR templates of Plaintiff, and directly encouraging other health

care providers to compete against Plaintiff."  *Id.* ¶ 321.

Anand's allegations seem to imply that he was a co-fiduciary in a joint venture with IBC, alleging that they were "partners."  Amen. Compl. ¶ 326 (citing Pennsylvania Limited Liability Company Act of 2016).  Anand does not plausibly allege, however, that the parties actually created a legal business partnership.  *See* Provider Agreement Section 7.16 ("None of the provisions of this Agreement is intended to create, nor shall be deemed or construed to create, any relationship between Provider and Independence other than that of independent entities contracting with each other solely for the purpose of effecting the provisions of this Agreement.").  Anand's breach of fiduciary duty claims are dismissed with prejudice.

## V.    CONCLUSION

For the foregoing reasons, the Amended Complaint is dismissed without prejudice for failure to comply with Fed. R. Civ. P. 8(a) and 12(b)(1).  Additionally, as described above, the Defendant's Motion to Dismiss under Rule 12(b)(6) is granted in-part and denied in-part.

Specifically, the Court dismisses the following counts with prejudice: Counts VII (Breach of Fiduciary Duties), XXI (Pennsylvania Corporate Practice of Medicine Doctrine), XXIII (Due Process Clause of the Fourteenth Amendment), XXIV (18 U.S.C. § 241), XXV (18 U.S.C. § 1584), XXVI (Breach of Fiduciary Duty by a Co-Fiduciary), XXVII (HealthCare Quality and Improvement Act), XXXII (Prima Facie Tort), XXXIV (Breach of Implied Duty of Good Faith and Fair Dealing), XXXV (Medical Gag Clause), XXXVI (Pennsylvania Insurance Company Law of 1929, 40 P.S. §§ 991.2101-2193), XXXIX (Medicare Act, 42 U.S.C. § 1396(a)), XLI (42 U.S.C. § 1983), XLII (42 CFR Part 2), XLIII (Health Insurance Portability and Accountability Act), XLV (Controlled Substances Act § 802), L (First Amendment), LI (Fourth Amendment), LII (Fifth Amendment), LIII (Equal Protection Clause of the Fourteenth Amendment), LIV (Art.

I, § 10, cl. 1, Contract Clause), LV (Art. I, § 8, cl. 3, the Commerce Clause), LVIII (Pennsylvania Insurance Department Act of 1921), LIX (18 U.S.C. § 1038), LX (18 U.S.C. § 35), LXI (18 U.S.C. §1035), LXII (18 U.S.C. § 1031), LXIII (18 U.S.C. § 1030), LXIV (The Gramm-Leach-Bliley Act of 1999).

Additionally, the Court will grant the Defendant's Motion to Dismiss, dismissing the following claims without prejudice: Counts XXXIII (Employment Retirement Income Security Act), XXXVII (Sherman Act), XL (Racketeer Influenced and Corrupt Organizations Act), XLIII (Sherman Act), XLVII (Mental Health Purity Act and Mental Health Purity and Addiction Equity Act).

The Court declines at this stage of the proceedings  to rule on the Defendant's Motion to Dismiss with respect to the following issues: Counts I (Declaratory Judgement), II (Breach of Contract), III (Unjust Enrichment), IV (Quantum Meruit), V (Fraudulent Inducement), VI (Promissory Estoppel), VIII (Breach of Implied Contract), IX (Negligent Misrepresentation and Deceptive Trade Practices), X (Intentional Interference with Contractual Relations), XI (Lanham Act), XII (trade Libel), XIII (Defamation), XIV (Commercial Disparagement), XV (Conversion), XVI (Misappropriation of Trade Secrets and Confidential Information, under Pennsylvania Uniform Trade Secrets Act), XVII (Tortious Interference with Contract, Prospective Contracts and Business Relations), XVIII (Unfair Competition), XIX (Misappropriation of Business Opportunities), XX (Fraud under Pennsylvania Law), XXII (Tortious Interference with Business Relationship Between Doctors and Patients), XXVIII (42 U.S.C. § 1981), XXIX (Interference with Prospective Economic Advantage), XXX (Equitable Estoppel, Estoppel (in Pais) and "Mend the Hold" Doctrine), XXXI (Violation of U.S.C. § 7434- Fraudulent Filing of Information Returns), XXXVIII (Violation of Federal Trade Commission Laws), XLIV

(American Disability Act), XLVI (Affordable Care Act), XLVIII (Civil Negligence), XLIX (Liability of Corporations in Tort), LVII (15 U.S.C. § 2301 *et seq.*, Federal Trade Commission Improvements Act) and issues raised regarding the statute of limitations.  The Court will address these issues and the Defendant's positions regarding dismissal of these claims if the Plaintiff elects to file an amended complaint that attempts to cure the deficiencies discussed herein and the Defendant files a Motion to Dismiss in response.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**